[No. 20240.   Department Two.   March 31, 1927.]

Jack Riley, *Respondent*, v. Henry Rutz, *Appellant*.[1]

[1] Malicious Prosecution (17-1)—Actions—Question for Jury. In an action for malicious prosecution, the question of probable cause for charging the theft of a battery is for the jury, where there was evidence warranting a finding that defendant did not make a fair statement of the facts, but caused plaintiff's arrest knowing that the battery, used by him in his duties, was taken to be recharged and without any criminal intent.

Appeal from a judgment of the superior court for Whitman county, McCroskey, J., entered April 9, 1926, upon the verdict of a jury in favor of the plaintiff, in an action for malicious prosecution. Affirmed.

*Lovell & Ott,* for appellant.

*John I. Melville,* for respondent.

Tolman, J.—This is an action for malicious prosecution tried to a jury, resulting in a verdict and judgment for $510, from which the defendant has appealed.

The only error assigned is based upon the refusal of the trial court to grant a judgment in favor of the defendant notwithstanding the verdict. An argument is advanced to the effect that there was no dispute as to the facts, and that therefore it was the duty of the court to hold, as a matter of law, that there was probable cause for instituting the criminal prosecution of which complaint is made. No doubt, if the premise is correct, the conclusion is sound. This calls for a brief examination as to the facts.

[1] It appears that respondent Riley was employed by the appellant upon a farm belonging to the appellant in Whitman county, appellant himself living

[1]Reported in 254 Pac. 849.

apparently upon another farm a short distance away. Among other things, it was respondent's duty to procure water for the stock in his charge. There was a well upon the place, equipped with an engine for pumping water. In the fall of 1924, the appellant brought to the farm a battery which he had taken from an automobile belonging to him, and connected it with the engine so that the same could be operated to pump the water. In December following, the respondent took the battery to Tekoa to have it charged, and thereafter returned it to the premises. Some time prior to the arrest, appellant demanded the battery, and probably made demand for it at least twice, which demand was refused. At the time of the first demand, respondent, according to appellant's testimony, said he had taken the battery to Tekoa to run his car to that town, and that appellant could have it as soon as he could get it back; that he could not get it back at that time on account of the bad roads. The second demand appears to have been made perhaps a month later, in the latter part of January. A brief statement of what occurred is as follows:

"A. We got to the gate and Mr. Riley just happened to come, so we were at the barn and I asked him if that was his car at the shed and he said yes. I told him I wanted to take the battery along with me because I wanted to use it and he said I could not have the battery and he went to the house. Q. You followed him to the house? A. Yes, me and my brother went to the house. Q. What conversation took place there? A. I rapped at the door. Mrs. Riley she opened the door and I stepped in and wanted to know the reason why I could not have this battery and she said we could not have it. She did not give any reason why I could not have it. Q. Did you need the battery? A. I needed it for my car. Q. Go on and state the next time that you asked about this battery. That was the time when the arrest was made. A. My brother

and I, we went back again on the 19th day of February. We went down there to get this battery and I stopped at the barn and then later I drove up to the house with the car, and I went to rap on the door and Mrs. Riley she did not open the door, but she spoke through the door and asked me who I was and I told her and that I wanted to talk to Mr. Riley, and she says that Mr. Riley was not to be talked to and for us to run along and peddle our papers and so I did not know what to do and so I came to Colfax.''

The prosecuting attorney testified that the facts disclosed to him by the appellant prior to the issuance of the warrant for respondent's arrest were:

''A. Mr. Rutz told me that he had a battery, some kind of a battery that was used on the place for the pumping of water; that this battery had been taken by this man Riley over to some other town, some town, Tekoa or Rosalia, some place. I do not recall the town part of it, but it had been moved over there by him for some purpose and that the battery was missing and that he, Rutz, did not know where the battery was, and that this man would not tell him and that he, Rutz, thought the battery had been taken by this man from his actions. Q. Do you remember whether he said the battery was then at Tekoa or had been at Tekoa prior to that time? A. He said that it had been taken over there and he did not know where it was at the time he talked with me. My recollection is that he said he did not know where it was. I thought maybe it still was over there, I did not know. Q. It had been taken to Tekoa? A. He said it had been taken to some town over there.''

The appellant says that he informed the prosecutor:

''A. I told him that I had a man working for me and he still was on the place and I left a battery there to pump water with. I told the prosecutor this man had been working there and was still on the place, and that I left the battery there to pump water with and I asked him for the battery and he said I could not have it. I told him that he had told me that he had

taken it to Tekoa, but where the battery was now I did not know. Q. What did he say? A. He said that I would have to swear out a warrant and have him arrested and see where the battery was.''

It appears from other evidence in the case, without serious contradiction, that the battery was taken from the farm only for the purpose of having it recharged, that it was there at the time of the later demands, and the jury were entitled to infer that respondent's refusal to surrender it was based only upon the thought that the battery was required for pumping operations, that he was reasonably entitled to its use in the performance of his duties, and that he had no intention at any time of converting it to his own use. Clearly, as we see it, there was room for different inferences to be drawn from the testimony, and one of the inferences which might be drawn was that appellant did not make a fair statement of the facts to the prosecuting attorney, in that he concealed from the prosecutor respondent's intent and purpose in refusing to surrender the battery, and by word and implication informed the prosecutor that respondent had a criminal intent, when he knew that no such intent existed. Under these facts, as we have set them forth and as we understand them, the question was one for the jury and not for the court.

The judgment is therefore affirmed.

MACKINTOSH, C. J., PARKER, BRIDGES, and ASKREN, JJ., concur.